## IN RE: Leticia BEHAGUE, Debtor.

### Case No. 9:11–bk–17031–BSS

United States Bankruptcy Court, M.D. Florida
**Fort Myers Division**

Filed February 21, 2012

---

**29.** *Id.*

**30.** *Id.*

Carmen Dellutri, David W. Fineman, David Lampley, The Dellutri Law Group PA, Fort Myers, FL, for Debtor.

Luis E Rivera, II, Henderson Franklin Starnes & Holt PA, Fort Myers, FL, for Trustee.

J. Steven Wilkes, Office of United States Trustee, Tampa, FL, for U.S. Trustee.

### Chapter 7

*ORDER DISMISSING CHAPTER 7 CASE EFFECT OF WHICH IS STAYED FOURTEEN DAYS FOR DEBTOR TO VOLUNTARILY CONVERT*

BARRY S. SCHERMER, United States Bankruptcy Judge

■ THIS CASE comes before the Court on February 8, 2012 at 1:30 p.m. to consider the United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(2), (Doc. No. 19), and the Debtor's Response thereto. *See* Resp. (Doc. No. 22). Present for the hearing was David Fineman, counsel to the Debtor, and J. Steven Wilkes, Trial Attorney on behalf of the United States Trustee. The United States Trustee seeks this Court to adopt *In re Thompson*, 457 B.R. 872 (Bankr.M.D.Fla.2011)(Briskman, J.) for the premise that a debtor is not permitted

to deduct from their current monthly income mortgage payments on surrendered property.

The *Thompson* decision was entered after the United States Supreme Court determined *Ransom v. FIA Card Servs.,*—U.S. ——, 131 S.Ct. 716, 725, 178 L.Ed.2d 603 (2011), which interpreted Section 707(b)(2)(A)(ii)(I) in holding that "a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category." In this case, the Debtor is intending on surrendering her primary residence. To that end, the Debtor has not made a mortgage payment in quite some time, she has moved out of the residence and obtained a lease on rental property, and the secured creditor had begun judicial foreclosure proceedings prepetition as well as obtained stay relief in the instant bankruptcy case.

The Supreme Court in *Ransom* dealt with the "applicable" IRS Local Standard for automobile ownership expense. This deduction from current monthly income is derived from Section 707(b)(2)(A)(ii)(I). The Supreme Court reasoned that without a loan or lease payment, a debtor owning an automobile free and clear, is not permitted to deduct from current monthly income the IRS Local Standard for automobile ownership expense.

Using this logic, Judge Briskman concluded in *Thompson* that debtors are not permitted to deduct a home mortgage payment on surrendered property because the payments on such loans are not actually incurred expenses. This position is practical and logical. However, contrary to *Ransom*, Section 707(b)(2)(A)(iii) governs what, if any, payments on secured debts are permissible deductions from a debtor's current monthly income, not Section 707(b)(2)(A)(ii)(I). Section 707(b)(2)(A)(ii)(I) specifically provides that "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." Thereby, Section 707(b)(2)(A)(ii)(I) cannot govern when and if a debt payment is a permissible deduction from current monthly income. The word "applicable" in Section 707(b)(2)(A)(ii)(I) only attaches to a debtor's monthly expenses governed by that clause, and not to the other clauses and subsections of permissible expense deductions from current monthly income.

Section 707(b)(2)(A)(iii) states that a debtor's average monthly payment of account of secured debts is to be calculated by taking the sum of all amounts scheduled as contractually due for 60 months post-petition, together with any payments necessary for the debtor, in a chapter 13 case, to maintain possession of the debtor's primary residence, and dividing that sum by 60. Section 707(b)(2)(A)(iii) contains neither a reasonableness limiter such as an "applicable" expense,[1] nor the pinpoint limiter of an "actual" expense.[2] Section 707(b)(2)(A)(iii) deals solely with payments on account of secured debts.

The inquiry the Court must take then is limited itself to whether the expense deduction is on account of a debt, and if so,

---

1. See Section 707(b)(2)(A)(ii)(I), "the debtor's applicable ...;" see also Section 707(b)(2)(A)(ii)(II), "the debtor's monthly expenses may include, if applicable ..."

2. See Section 707(b)(2)(A)(ii)(II), "the debtor's monthly expenses may include ... the continuation of actual expenses," see also, Section 707(b)(2)(A)(ii)(III), "the debtor's monthly expenses may include the actual administrative expenses ...;" Section 707(b)(2)(A)(ii)(IV), "the debtor's monthly expenses may include the actual expenses ...;" and Section 707(b)(2)(A)(ii)(V), "the debtor's monthly expenses may include ... in excess of the allowance ... based on the actual expenses for home energy costs ..."

whether such debt is a secured debt. Nothing in Section 707(b)(2)(A)(iii) requires the Court to consider whether the debtor intends on making a payment on account of a secured debt. To the contrary, Section 707(b)(2)(A)(iii)(II) requires the debtor to deduct, as additional expense, the amount of any payments necessary for the debtor to maintain possession of the debtor's primary residence.[3] Inclusion of a cure provision in Section 707(b)(2)(A)(iii) brings into the analysis the deceleration, cure, and maintain provisions of a standard chapter 13 plan.

Congress enacted the means testing under Section 707(b)(2) to provide a needs-based test to establish whether there is a presumption of abuse. By fashioning such means testing, Congress afforded certain trade-offs between what is an actual accurate picture of a debtor's financial situation and that which is standardized. This is seen in *Ransom's* application of Section 707(b)(2)(A)(ii)(I). This is likewise evidenced by Section 707(b)(2)(A)(iii)(I–II). Factual presumptions are contained in both of these. First, that a debtor is only permitted to deduct IRS standard deductions from their current monthly income that are applicable to their financial condition. Second, that a debtor is permitted to deduct payments on secured debts under a theory of deceleration, cure, and maintain certain debts secured by collateral necessary for the support of the debtor and the debtor's dependents regardless of their stated intent in chapter 7.

This does not mean that the Debtor wins in this motion to dismiss. The Debtor has won the battle in regards to the application of Section 707(b)(2) and the presumption of abuse, but has lost the war. Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the core inquiry into the amendments of Section 707(b) is whether a debtor has the ability to repay her debts. The 2005 amendments were structured to ensure that debtors repay the maximum that they can afford.

■ Here, on the face of the Debtor's Schedule J, without any changes or adjustments, the Debtor has $174.43 in excess monthly income. Over 60 months that would equate to $10,465.80. The Debtor schedules $28,103.77 in unsecured debt, which would result in approximately 35% repayment to creditors. Section 707(b)(3) is implicated in that the totality of the circumstances in this case warrants dismissal.[4]

■ Section 707(b)(1) provides that a bankruptcy court may raise dismissal under Section 707(b) on its own. Parties are not without remedies under Section 707(b)(3) as the time period has not expired. Under Section 102, this Court concludes that the Debtor has had sufficient notice that Section 707(b)(3) would be at issue in this case at the hearing on the United States Trustee's motion to dismiss.

Accordingly, upon the foregoing and for good cause found, **IT IS ORDERED, ADJUDGED,** and **DECREED** that:

1. The United States Trustee's Motion to Dismiss, (Doc. No. 19), be and is hereby **GRANTED,** in that the Court raises Section 707(b)(3) through the United States Trustee's motion to dismiss and finds and concludes that the totality of the cir-

---

**3.** Section 707(b)(2)(A)(iii)(II) contains other limited provisions for curing of arrearages which are not relevant to this case.

**4.** *See generally In re Behlke,* 358 F.3d 429, 437–38 (6th Cir.2004)(concluding that an ability to repay approximately 14% to unsecured creditors alone may be sufficient to warrant dismissal under substantial abuse).

cumstances arises warranting either dismissal or voluntary conversion of the case;

2. The chapter 7 bankruptcy case of *In re Leticia Behague,* 9: 11–bk17031–BSS be and hereby stands **DISMISSED,** the effect of which is stayed for fourteen (14) days; and

3. The Debtor has **FOURTEEN (14) DAYS** from the entry date of this order to seek conversion of this case to chapters 11 or 13, or alternatively to seek reconsideration based upon facts the Court was not aware of at the hearing.

**DONE** and **ORDERED.**